SARAH BROWN, PLAINTIFF, *v.* DANIEL R. LYDDY, DEFENDANT.

*Lease — covenants of renewal — Appraisers to ascertain value — right of parties to appear and be heard before — "Ascertain" — meaning of.*

A lease, containing a privilege of renewal, provided that if the parties were unable to agree upon the rent, an arbitrator should be chosen by each party, the two to determine the value of the lot, and allow five per cent thereon as rent; and if they were unable to agree, that they should choose an umpire whose decision should be final. It also provided that, if a renewal was refused by the lessor, he should pay to the lessee the value of the building on the lot, to "be ascertained by three disinterested persons, on oath, to be chosen as aforesaid." *Held,*

That it was intended, that the value of the building should be ascertained in the same manner as that of the lot for the purpose of fixing the rent.

That the parties were entitled to appear and be heard before the arbitrators as to the value of the building.

That even if a party waived his right to appear before the two original arbitrators, he was still entitled to appear and be heard before the umpire, and that an award by the latter, where a party had had no opportunity to appear before him, was void.

EXCEPTIONS ordered to be heard in the first instance at General Term after the dismissal of the complaint at Circuit. This action was brought by the plaintiff to recover the appraised value of a building, alleged to have been made in accordance with the provisions of a certain lease. The case was tried at the New York Circuit, and, after the plaintiff's case was closed, upon motion of defendant's counsel, the court dismissed the complaint, and ordered the exceptions to be heard in the first instance at the General Term.

The plaintiff, Sarah Brown, held, by assignment under a certain lease from the Remsen estate, the house No. 67 Monroe street, New York, the lease containing certain covenants as to its renewal. It was provided, however, by the lease, that if the lessor should elect to grant a further renewal of the lease to the lessee, that the rent of the premises, under such renewal, if not agreed upon between the parties, was to be ascertained as follows : Each party "shall choose a disinterested person to ascertain the same, which persons so chosen shall themselves, respectively, be owners, in fee

simple, of one or more lots of land in the neighborhood of the one hereby demised, and shall, in making their award or determination in the said premises, under oath, appraise and value the said lot or lots of land hereby demised, at its or their full and fair worth or price at private sale, considering the same as an unincumbered vacant lot or lots, and five per cent on the amount of their said appraisement or valuation shall be the annual rent of the said lot or lots of land for such further term ; and in case the arbitrators should differ in the amount of their appraisement or valuation as aforesaid, they shall then choose an umpire, qualified as aforesaid, whose decision, under oath, shall fix and determine the same, and five per cent on the amount of the appraisement or valuation so fixed and determined shall be the annual rent of the said lot or lots of land for such further term." And it was further mutually covenanted and agreed that the lessor should " have the full liberty and choice, either to grant a second renewal of this lease for the further term of twenty-one years thence ensuing, at such annual rent, payable quarterly, as shall be ascertained and determined in the manner aforesaid, or to pay unto the said party of the third part, his executors, administrators or assigns, the value of the said brick dwelling-house, or the value of such other brick dwelling-house of like description as shall then stand in its stead, which value shall be ascertained by three disinterested persons, on oath, to be chosen as aforesaid."

On the 31st March, 1875, the defendant (Lyddy) became the owner of the fee, subject to said lease, and on the 1st May, 1875, he elected not to grant any further renewal of the lease.

The plaintiff and lessee appointed William Colligan as her arbitrator under the lease, and the lessor (Lyddy) appointed one Charles McManus as his arbitrator, and these two, after a disagreement, selected one Bernard Maguire, as a third party, to ascertain the value of the building. Maguire made an award in writing. The defendant and lessor refused to be bound by the award in question, alleging the following reasons :

First. Because the value of the building in question should have been ascertained by *three disinterested persons*, as provided by the lease, and not by two.

Second. Because none of the alleged arbitrators took the usual

and necessary oath of office, as provided by the lease, as this was necessary to confer jurisdiction, and was not waived.

Third. That after the alleged disagreement of McManus and Colligan, and before the alleged selection of Maguire, the lessor was not notified of the same, and had no knowledge thereof.

Fourth. That the alleged selection of Maguire as a third party was without the authority, notice, consent or knowledge of the lessor, and was not in writing.

Fifth. That the third party, Maguire, never took any oath, and never notified the lessor of his appointment, or of the time and place of hearing the proof of the parties as to the value of the building, and that no such proofs were taken by him, etc.

Sixth. That McManus, who is alleged to have acted as arbitrator for the lessor in the first instance, withdrew and refused to act before Maguire and Colligan made the pretended award in question.

Seventh. That Maguire and Colligan, who signed the alleged award in question, acted with partiality, prejudice, etc., in making the same, and were improperly influenced by the attorney for the lessee, who brought them to his office, and there prepared the same with his own hand and then procured them to sign it.

*Geo. W. Lord*, for the plaintiff.

*John A. Goodlet*, for the defendant.

BRADY, J.:

On the 20th of July, 1833, Henry Remsen and others leased to Seth Godfrey the lot now known as 67 Monroe street, for the term of twenty-one years, with privilege of renewals. There was a covenant in the lease that if at the expiration thereof, or any renewal thereof, the lessors should elect not to grant any further renewal, the lessors or their assigns would pay to the lessee or his assigns the value of the brick dwelling then erected on the lot. On the 31st day of March, 1875, the defendant Lyddy became the owner in fee of the demised premises, subject to the conditions of said lease, and on the 8th day of February, 1864, all the interests of the original lessee became vested in the plaintiff. Mr. Lyddy elected *not* to grant any further renewal, and thereupon the parties proceeded to

select appraisers to ascertain the value of said house, in the manner provided for in the lease. Mr. Lyddy selected Charles McManus as his appraiser, and Mrs. Brown selected William Colligan. The appraisers so chosen were unable to agree as to the value of the house, and thereupon they selected Bernard Maguire as umpire. On the 18th day of June, 1875, Mr. Maguire made his certificate or award, in writing, appraising the value of the house at $5,600. Notice thereof was given to the defendant, but he declined to pay the amount, and thereupon this action was commenced upon the covenant contained in the lease, and the certificate of Mr. Maguire was offered in evidence upon the question of value. After the appraisers had been selected the defendant requested Mr. Colligan to meet Mr. McManus at Mrs. Brown's house, No. 67 Monroe street. All the parties met there, including Mr. Lyddy, and after some general conversation as to the value of the house Mr. Lyddy and Mrs. Brown were requested by the appraisers to withdraw from the room, so that the latter might proceed to make the appraisement. No request was then made by the defendant that the appraisers should be sworn, or that he should have an opportunity to procure witnesses. It further appeared, however, that Maguire never notified the defendant of his appointment, or of any time and place of hearing as to the value of the building, and that no such proofs were taken by him. The defendant's counsel moved to dismiss the complaint on the grounds which will be considered. The motion was granted, and plaintiff excepted. The motion to dismiss the complaint was upon the grounds that there had been no appraisement made according to the lease or the terms of its provisions, and further, that Mr. McManus did not take any oath. The first proposition stated is founded upon the theory that an award could not, under the provisions of the lease, be made by less than three disinterested persons who should be sworn prior to entering upon the discharge of their duty. The covenant, in reference to it, leaves no doubt of the manner in which the arbitrators or appraisers should be chosen, and should perform their duty. It is provided that if, upon a renewal of the term demised, the parties could not agree upon the rent to be paid, each party should choose a disinterested person to ascertain the same, and declared that the persons so chosen should respectively be owners in fee simple of one or more

lots of land in the neighborhood of the lands demised, and further that in making their award or determination, under oath, they should appraise the value of the lot at its full and fair worth or price at private sale, considering the same as an unincumbered vacant lot or lots, and that five per cent on the amount of their appraisement or valuation should be the annual rent of the lots for such further term. It also declared that in case the arbitrators should differ in the amount of their appraisement or valuation they should choose an umpire qualified, as aforesaid, whose decision, under oath, should fix and determine the same, and that five per cent on the amount of the appraisement or valuation so fixed and determined, should be the annual rent of the lots of land for such further terms. It was further covenanted that the lessors should have full liberty and choice either to grant a second renewal of the lease, or pay to the lessee the value of the brick dwelling-house which should then be standing in its stead, which value, as the lease declares, shall be ascertained by three disinterested persons, on oath, to be chosen as aforesaid. The covenant would seem at first blush to contemplate the selection of three persons *in limine* to make the value, but such was not the intention, because the persons designated are to be chosen as aforesaid. There was no provision, as aforesaid, for selecting three persons, unless the two to be chosen by the parties were unable to agree, in which case the third was to be designated by the two. If this mode of procedure were observed then three persons would be named or chosen, as aforesaid, and the design carried out by which the system of designation and arbitration would be observed, namely, by the selection of an umpire if the two appraisers named by the parties should not agree. If the words "as aforesaid" have any value they accomplish this result. If they have not, then the value is to be determined by three persons, and there is no provision in case they do not agree, by which a final appraisement can be made. They should then all join. (*Cope* v. *Gilbert*, 4 Denio, 347.) This was not the intention of the parties, and is not in harmony with the scheme adopted and expressed. It was that in reference to the value of the building as well as to that of the house (lands), the same mode of ascertainment should prevail. The question thus discussed is one of construction, and it presents no difficulty upon

reflection. Having arrived at this conclusion, it follows that the theory of defendant stated cannot be sustained. The proposition, however, involves a further consideration. It is claimed by it that there had been no appraisement made, according to the lease or the terms of its provisions. The appraisers, as we have seen, were to ascertain the value, but in what manner is not stated, whether by the exercise of their own knowledge and judgment or by a hearing at which the parties could produce witnesses. The word "ascertain," however, has its meaning, and, therefore, its force. To make sure or certain; to fix; to establish; to determine; to settle, are the definitions of that word, according to Worcester, and this would seem to demand the observance of the usual mode of investigation in order to establish, to determine, to settle the value. The right of the parties to a hearing, and to produce witnesses, is one of the established privileges (*Elmendorf* v. *Harris*, 23 Wend., 628), although it may be waived by them. The courts would not declare that such a right did not exist, unless the terms of the submission so provided, or a waiver, was clearly demonstrated. (*Day* v. *Hammond*, 57 N. Y. R., 479.) In this case it may appear that the waiver of this right to be heard before the two first chosen was sufficiently shown, but there is no warrant for saying that the same right to be heard before the umpire was waived; there is no justifying such a conclusion. The right to be heard before him is co-equal with that to be heard before the others. If, in other words, a right to a hearing exists at all, it extends to the umpire or third person selected, when the others fail to agree. This, as a rule of law, seems to have been decided by the court of last resort, and is conclusive of this appeal. (*Day* v. *Hammond, supra.*) This view makes it unnecessary to examine any other question, because its application rendered it obligatory, when the original appraisers failed to agree, to give notice to the parties that they might proceed either to proofs or elect to waive them, depending upon the judgment of the umpire alone. This action was brought upon the award, as we understand the pleadings, and the conclusion arrived at in regard to that document renders it necessary to affirm the judgment. The plaintiff is not deprived of further efforts to obtain compensation, and it may be that it can be accomplished by a renewal of the arbitration proceeding, or amendment of the pleadings as she may be advised.

New trial denied. Defendant is entitled to judgment, with costs.

Davis, P. J., concurred.

Present — Davis, P. J., Brady and Daniels, JJ.

Ordered accordingly.